"Previously the Indian Claims Commission determined, under the 'fair and honorable dealings’ clause of the Indian Claims Commission Act (25 U.S.C. §70a(5)), that the Federal Government was liable to appellant Creek Nation on account of the loss to the Nation of 142 separate and scattered allotments of Creek tribal lands in Oklahoma which were wrongfully allotted in 1907 by the Government to non-members of the Nation. 24 Ind. Cl. Comm. 238 (1970). After a trial on the amount of recovery, the *456 Commission decided that appellant should be awarded $1,115,706.20 for these improper allotments. 39 Ind. Cl. Comm. 383 (1977); 40 Ind. Cl. Comm. 90 (1977). The Creek Nation appeals from the major elements of this award; the Government has not filed a cross-appeal. The court has considered the record, the briefs, and the oral argument, and now rejects appellant’s appeal and affirms the Commission.
"In reaching its determination on amount, the Commission first calculated the fair market value of the surface of the 142 improper allotments as of March 4, 1907 (the agreed upon date for the loss by the Creek Nation of these allotments), reaching the figure of $430,324.65; then the Commission added an increment of $110,000 for known and potential coal deposits under the lands; then another $550,000 for known and potential oil and gas deposits; and finally an increase of $25,381.55 for Creek tribal funds paid in cash to erroneous allottees. The total came to $1,115,706.20 since no offsets were claimed by the Government in this docket. The appellant challenges only the surface valuation of the land, and the amount allowable for oil and gas.
"In passing upon the amount of an award under the 'fair and honorable dealings’ clause, we must always remember that the Commission has discretion as to the method or formula it adopts, as well as in the actual amounts it finds owing, and that this court can overturn the Commission’s determinations only if they are an abuse of discretion (i.e. arbitrary or capricious) or unsupported by substantial evidence on the record as a whole. That is the burden of our holding in Seminole Nation v. United States, 203 Ct. Cl. 637, 654, 492 F.2d 811, 821 (1974), where we left it to the Commission to decide, in its discretion, whether to give fair market value as of the date of 'taking’ (in the non-eminent domain sense), or the rents and profits derived from the station reservations, or a combination of both standards, or some other measure. We did not mandate any of these criteria. Appellant thinks that where there exists, as here, a 'special relationship’ between the Indians and the Government, a breach by the defendant of that relationship, falling under the 'fair and honorable dealings’ clause, necessarily calls for the most generous standard of recovery, but we see nothing in the Claims Commission Act *457 or in our decisions which requires the separation of that particular type of clause (5) case from other transgressions of 'fair and honorable dealings.’ For all clause (5) cases the overall criterion is monetary redress for less-than-fair-and-honorable-dealings, and in every case the Commission must exercise its fair discretion as to what that redress should be.
"In this instance the Nation says, particularly with respect to oil and gas, that the Commission had to award the actual profits from oil and gas garnered from the 142 allotments down through the years after 1907. This may possibly have been a permissible method of determining quantum, but the Commission was within its discretion to decide that the land should be valued, in all its aspects, as of March 4, 1907. This is a land case and thus far the uniform practice has been in all 'takings’ of land (again, in the non-eminent domain sense) under the 'fair and honorable dealings’ clause, to use the fair value of the 'taken’ land as of the date of 'taking.’ The one actual decision appellant cites as showing that fruits have been awarded (Makah Tribe v. United States, 40 Ind. Cl. Comm. 131 (May 4, 1977)) did not involve land but government promises of help in carrying on fishing and other maritime activities. We cannot say that the Commission exceeded its discretion in adhering to its past practice in land-'taking’ cases.
"Similarly, we are unable to find an abuse of discretion in the figures the Commission adopted for surface value (as of March 4, 1907) and for oil and gas value (as of the same date). There was conflicting evidence by expert witnesses on the surface value, and the Commission had a range within which to choose. It concluded that the 22,737.21 acres (contained in the 142 erroneous allotments) had a surface fair market value of $430,324.65, an average of $18.92 per acre. Under the review standard which binds us on factual issues (see, e.g. Iowa Tribe of Iowa Reservation v. United States, 195 Ct. Cl. 365, 368-69 (1971), cert. denied, 404 U.S. 1017 (1972); Sac and Fox Tribe v. United States, 161 Ct. Cl. 189, 207, 315 F.2d 896, 906, cert. denied, 375 U.S. 921 (1963)), we cannot say the Commission erred. There was sufficient evidence to support this result (though there may also have been evidence to sustain a higher sum).
"As for oil and gas, appellant’s expert concentrated on the actual profits since 1907 of the 142 wrongful allot *458 ments, and, as we have pointed out, the Commission had the right to reject that approach and to value the oil-and-gas component as of March 4,1907.[1] At that time there was no oil or gas production on any of these tracts, and it was uncertain how much of these minerals underlay any or all of these widely scattered pieces of land. There is evidence that $25 per acre was considered (early in 1907) a fair estimate of the value of an oil lease in the general area. The Commission added $550,000 for known and potential oil and gas deposits to the $430,324.65 it had found for the surface value of the 22,737.21 acres. With the record as it is, we are unable to characterize this determination as arbitrary or capricious or as unsupported by substantial evidence on the record as a whole.
"it is therefore ordered and concluded that the determination of the Indian Claims Commission, insofar as appealed from, is Affirmed.”
Appellant’s petition for writ of certiorari was denied October 2, 1978.

 We do not mean to say that no part of the report of plaintiffs expert was relevant to value as of that date, but it is plain that large parts of the report had no substantial bearing on value as of 1907 because they related to oil production or leases which were too far removed in time.